# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

## Commonwealth *v.* Fragassa, Appellant.

*Criminal law—Murder—Evidence—Continuance of conditions—Presumption—Evidence—Charge—Mistake—Practice.*

1. In a murder trial, evidence that defendant was a member of the "Black Hand Society," two years before the killing, is admissible, where it is shown that one of the objects of the society was unlawful killing, and other evidence shows acts and circumstances explainable only on the theory that defendant retained membership in the organization and recognized its obligations and forms immediately before the killing.

2. Things shown once to have existed must be presumed to continue in that state until the contrary is established by evidence either direct or presumptive.

3. Where at the end of a charge in a murder case, counsel calls the attention of the judge to a mistaken statement of fact made by him, a conviction will not be reversed, where the judge tells the jury that they were to be governed by their own recollection, and counsel take no exception and make no further request.

*Criminal law—Murder—Refusal of new trial—After-discovered evidence—Discretion—Abuse.*

4. A new trial will not be granted after conviction in a murder trial, because of after-discovered evidence, where it appears that such evidence was easily obtainable by defendant, and should have been offered at the trial.

5. Nor will a new trial be granted where the alleged new evidence is of little value and it does not appear that it was not obtainable before or during the trial.

6. In such case there is no abuse of discretion in not granting a new trial.

Argued April 16, 1923.   Appeal, No. 82, Oct. T., 1923, by defendant, Angelo Fragassa, from judgment of O. & T., Washington Co., Aug. T., 1922, No. 185, and Nov. T., 1922, No. 2, on verdict of guilty of murder of the first degree, in case of Com. v. Angelo Fragassa et al.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before CUMMINS, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty upon which sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, instructions and refusal of new trial, quoting record.

*A. Kirk Wrenshall,* with him *Alex. M. Templeton,* and *John S. Robb, Jr.,* for appellant.—There was no testimony that defendant was a member or leader in the Black Hand Society at the time of killing with which defendant was charged: McManus v. Com., 91 Pa. 57; Hester v. Com., 85 Pa. 139; Hiester v. Laird, 1 W. & S. 245.

*Howard W. Hughes,* District Attorney, with him *Warren S. Burchinal,* Assistant District Attorney, for appellee.—The matter of sufficiency of evidence introduced under an offer is not raised by assigning as error the court's ruling in admitting the offer, but by assigning as error the court's ruling in refusing to strike out: Moschzisker's Trial by Jury, page 146, section 220; Lynch v. Electric Light Co., 268 Pa. 337; Com. v. Duffy, 49 Pa. Superior Ct. 344, 357; Com. v. Donnelly, 40 Pa. Superior Ct. 116; Com. v. Bell, 166 Pa. 405.

It is not essential that the slayer, in committing the crime, must have been acting as the agent of the Black Hand Society, before the facts falling within the scope of the offer became relevant: McManus v. Com., 91 Pa. 57,

59-63, 66; Hester v. Com., 85 Pa. 139; Duffy v. Com., 6 W. N. C. 311; Com. v. Varano, 258 Pa. 442; Com. v. Campolla, 28 Pa. Superior Ct. 379.

The action of the court in passing on a motion for a new trial is subject to review only for manifest abuse of discretion: McEvoy v. Cab Co., 264 Pa. 418, 421; Boggs v. Tea Co., 266 Pa. 428, 434.

Where counsel desires to complain of a possible failure of the jury to hear a part of the court's charge, such complaint must be made before verdict: Com. v. Pava, 268 Pa. 520, 525; Com. v. Razmus, 210 Pa. 609, 611; Com. v. Scherer, 266 Pa. 210, 215; Alwine v. Coal Co., 271 Pa. 571, 575; McEvoy v. Cab Co., 264 Pa. 418, 421.

OPINION BY MR. JUSTICE FRAZER, June 23, 1923:

Defendant was jointly indicted with two others charged with the killing of Gabriele Fiore in the early morning of May 29, 1922, at his home in the Borough of Canonsburg. Separate trials were granted and defendant convicted of first degree murder. The evidence on behalf of the Commonwealth is sufficient to sustain the verdict and the only questions raised on this appeal relate to the admission of evidence, to alleged misstatements of testimony in the charge of the court and refusal of the court below to grant a new trial on the ground of after-discovered evidence.

On the night the crime was committed, defendant and his codefendants, Marcantonio Daniele and John Daniele, were seen standing on the street corner, together with several other men, talking in a noisy and boisterous manner. Gabriele Fiore, the deceased, joined them and Marcantonio Daniele was seen to strike him and order him to proceed home. Fiore left the party but before returning to his home visited the police station near by and notified the officers of his fear of personal violence from defendant and those with him, stating he believed his life to be in danger. In the meantime the three defendants remained standing on the street corner and Marcantonio

Daniele was heard to utter the word "Caragno," and as he did so Fragassa stooped or bowed before Daniele and kissed the latter's hand, the three immediately departing in the direction of the home of Fiore. A witness for the Commonwealth testified she saw Marcantonio Daniele assisting Fragassa through a window in the room of the home in which Fiore lived and shortly thereafter a report of a pistol discharged inside the room was heard and Daniele immediately left the place walking in the direction of his home. A few minutes after the shot, Fiore was found dead in his room with a bullet hole in his head. Defendant admitted he fired the shot which killed deceased, claiming, however, he did so in self-defense.

The first and second assignments of error question the action of the trial court in admitting evidence to show defendant and Daniele were members of the Black Hand Society two years before Fiore was killed. The contention is that such evidence referred to a time too remote to have bearing on the question of membership at the time the offense was committed. There were two witnesses offered by the Commonwealth, each serving a term of imprisonment in the Western Penitentiary, one having been confined during twenty-seven months previous to the date of the trial, or approximately six months after the crime was committed and the other three years and five months preceding the date of the trial. The court admitted the evidence for the purpose of showing the relationship between defendant and Daniele, to explain the statement made by the latter to the former shortly before the crime was committed and to throw light on the actions of the three persons immediately before the assault upon deceased on the street, and further to show a motive for the crime. One of the witnesses, Pollifrone, testified he had been and still was a member of the Black Hand Society and that its purpose included various unlawful objects, such as blowing up houses and killing and robbing. He gave detailed information relating to

the nature of the oath, the manner of administering it to members and the leader's authority over those belonging to the society, and testified also to the existence of a secret code used by the members and that the word "Caragno" was a secret command directing the person addressed to kill another person who had incurred the enmity of the society. He further testified that both defendant and Daniele were members and familiar with the code, the latter having been the leader of the Canonsburg local branch. Another witness, Piazzarelli, had previously been a member but was not at the time of the trial and had not been for a period of five years. He corroborated the testimony of Polifrone, however, in all other respects. This evidence was properly admitted for the purpose for which it was received by the trial judge. It served as an explanation of the meaning of the word "Caragno" followed by an outward sign of obedience and recognition of authority and thus supplied the motive for the commission of the crime. While it did not necessarily prove defendant remained a member of the society until the time the crime was actually committed, we are not convinced it was not competent evidence for that purpose, in view of other circumstances occurring immediately before the killing of Fiore. "The rule is a general and reasonable one that things shown once to have existed must be presumed to continue in that state until the contrary is established by evidence either direct or presumptive": Oller v. Bonebrake, 65 Pa. 338. The principle there stated was applied to sustain a presumption that a parent who made advances to children, intended on his death intestate that such advancements should be taken into account in distribution of his estate. In Hartman v. Incline Plane Co., 11 Pa. Superior Ct. 438, the rule was applied to the continued ownership of property. It is not necessary, however, to rely solely on such presumption in the present case for the reason the testimony as to previous connection with the society was followed by evidence of acts and circumstances explainable only on

the theory that defendant retained membership in the organization and recognized its obligations and forms immediately before the killing. This sufficiently indicated continuance of membership down to the time the crime was committed and brings the case within the principles stated in Carroll v. Com., 84 Pa. 107; Campbell v. Com., 84 Pa. 187; Hester v. Com., 85 Pa. 139, and McManus v. Com., 91 Pa. 57, known as the "Mollie Maguire" cases.

The third assignment asserts the trial judge, in charging the jury, misquoted portions of the testimony with reference to whether a window at which defendant admitted he fired the shot at deceased was a front or rear window. At the end of the charge counsel for defendant called the court's attention to the misstatement of the fact whereupon the court instructed the jury they should be governed by their own recollection and not by the recollection of the trial judge. No further request was made by counsel for defendant or exception taken and apparently defendant's attorneys were satisfied with the correction made. In view of the fact that defendant admitted his presence at the scene of the shooting and actually fired the fatal shot, though, as he claims, in self-defense, it is not material at which window he may have been seen by the witness. However, the statement by the court that the jury were to be governed by their own recollection was sufficient to remove any erroneous impression they may have formed from the court's earlier remarks.

The fourth assignment of error complains of the refusal of the court below to grant a new trial on the ground of after-discovered evidence. The affidavits offered in support of the motion were to the effect that powder marks resulting from the firing of jacketed bullets used in defendant's pistol were less conspicuous than those resulting from the use of bullets of other descriptions. This evidence is material as bearing on the question whether the shot might not have been fired at close

range, as testified by defendant, while deceased held him by the throat, notwithstanding powder marks were not found on the person of deceased. The court held this evidence was not sufficient to require another trial for the reason it was easily obtainable by defendant and should have been offered at the time of the trial. Other testimony offered was to the effect that the leader of the Black Hand Society in this State had gone to Italy a short time before the murder was committed. This was also held insufficient by the court below because of its little value as evidence to show that defendant was not a member of the society at the time and for the further reason it did not appear the evidence was not obtainable before or during the trial. We find nothing under these assignments to indicate abuse of discretion on the part of the court below.

The judgment and sentence of the court below are affirmed and the record remitted for the purpose of execution.